996 F.2d 1228
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest Jack HILL, Defendant-Appellant.
 No. 92-30196.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1993.
Decided June 25, 1993.
 
 1
 Before: PREGERSON, KLEINFELD, Circuit Judges, and INGRAM, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Ernest Jack Hill appeals his sentence imposed after he pled guilty to violating 18 U.S.C. §§ 111 and 1791(a)(2). Hill contends that the district court erred by (1) increasing his base offense level by three levels under U.S.S.G. § 2A2.4(b), (2) adding three points to his criminal history score under U.S.S.G. §§ 4A1.1(d) and (e), and (3) refusing to depart downward.
 
 
 4
 We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. §§ 1291 and 1294. We affirm.
 
 BACKGROUND
 
 5
 At all relevant times, Hill was a federal prisoner incarcerated at the Federal Correctional Institution in Sheridan, Oregon. On April 19, 1991, corrections officers William Earl and Brian Thomas conducted a random search of Hill's prison cell.[1] As part of the random search, the officers also conducted a pat down body search on Hill. One of the officers felt an object in Hill's front, right pocket and ordered Hill to turn his pockets inside out. Hill did so, but held his right-hand pocket in a clenched fist.
 
 
 6
 The officers then ordered Hill to reveal what he was concealing. Hill denied that he was hiding anything but refused to open his fist. When Hill attempted to put the hidden object in his mouth, each officer grabbed one of Hill's arms and forced them behind Hill's back. All three fell to the floor. Officer Earl then activated an alarm, calling for other officers.
 
 
 7
 While on the floor, Hill initially offered little resistance. When other officers arrived at the cell, however, Hill verbally and physically resisted with greater force. In the course of his resistance, Hill kicked Officer Tannahill, causing Tannahill to lose his balance and hit his head against the cell wall.
 
 
 8
 A fourth officer then handcuffed Hill. The officer retrieved a green balloon, containing six valium tablets, from Hill's right hand. When the officers asked Hill if he had any more contraband, Hill voluntarily surrendered twelve more tablets of valium concealed in his underwear.
 
 
 9
 In response to these events, the Parole Commission deducted 75 days from Hill's accrued "statutory good time" credits. In addition, the Commission ordered Hill to serve 30 days in disciplinary segregation, and restricted Hill from social visiting for six months. The Commission also increased Hill's term of imprisonment for his underlying fraud conviction.
 
 
 10
 Hill was then charged in federal court under a four-count indictment. Counts 1-3 charged him under 18 U.S.C. § 111 for resisting a federal corrections officer. Each count named a different corrections officer as a victim. Count 4 charged Hill with possession of diazepam (valium), in violation of 18 U.S.C. § 1791(a)(2) (possession of a prohibited object by a prison inmate).
 
 
 11
 Pursuant to a plea agreement, Hill pled guilty to Counts 2 and 4. The government dismissed Counts 1 and 3. Count 2 specifically charged Hill with "assaulting, resisting, opposing, impeding, or interfering with" Officer Earl.
 
 
 12
 Prior to sentencing, Hill raised two objections to the Presentence Report. First, Hill objected to the applicability of section 2A2.4(b)(1) of the Sentencing Guidelines. This section provides for a three-level increase if the offense "conduct involved physical contact." U.S.S.G. § 2A2.4(b)(1). Hill argued that his "conduct" with respect to Officer Earl did not "involve physical contact" within the meaning of this section.
 
 
 13
 Hill also objected to a three-point increase in his criminal history score under sections 4A1.1(d) and (e) as "impermissible double punishment." These sections provide for an increase in criminal history score if a defendant commits a crime while serving a prison sentence.
 
 
 14
 In addition, Hill requested that the district court depart downward in light of his history of psychological problems and the administrative sanctions imposed by the Parole Commission.
 
 
 15
 The court ruled against Hill on each of these grounds. The court sentenced Hill to a ten-month term of imprisonment on Count 2 and a two-month term on Count 4. The sentences were to be served concurrently, but consecutive to Hill's underlying sentence for bank fraud and conspiracy.
 
 
 16
 On appeal, Hill challenges his sentence on these same three grounds.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 17
 We review de novo the district court's application of the Sentencing Guidelines. United States v. Anderson, 895 F.2d 641, 644 (9th Cir.1990) (citations omitted). We accept the district court's factual findings unless clearly erroneous. Id. (citations omitted).
 
 
 18
 II. DID THE DISTRICT COURT ERR BY INCREASING HILL'S OFFENSE LEVEL UNDER U.S.S.G. § 2A2.4(b)(1)?
 
 
 19
 Hill pled guilty to Count 2, under 18 U.S.C. § 111, for his conduct toward Officer Earl. Hill contends that the district court erred in increasing his offense level on this count under Guidelines section 2A2.4(b)(1). Under section 2A2.4(a) of the Sentencing Guidelines, "obstructing or impeding an officer" (which includes a violation of 18 U.S.C. § 111) carries a base offense level of six. However, section 2A2.4(b)(1) provides for an additional three-level increase if a defendant's "conduct involved physical contact."
 
 
 20
 The only physical contact between Hill and Earl was the contact initiated by Earl. Hill was attempting to swallow contraband when Earl and another officer forced Hill's arms behind his back, and the three fell to the floor. Hill was not physically aggressive until the other officers arrived. Nothing in the record indicates that Earl was a victim of this later resistance.
 
 
 21
 Hill argues that his physical contact with Earl is insufficient to satisfy section 2A2.4(b)(1) because he did not initiate the contact with Earl. The district court disagreed and imposed the increase based on this contact.
 
 
 22
 We need not reach the issue of whether Hill's physical contact with Earl is sufficient to support a three-level increase, because such an increase is required by Hill's physical contact with Officer Paul Tannahill. According to U.S.S.G. § 1B1.3(a)(2), we must consider Hill's conduct toward Tannahill when sentencing Hill under the Guidelines. See U.S.S.G. § 1B1.3(a)(2) ("Relevant Conduct (Factors that Determine the Guideline Range)"); cf. United States v. Loveday, 922 F.2d 1411, 1417 (9th Cir.1991) (concluding that the Sentencing Commission intended to permit a court to consider acts that "relate in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct.") (citation omitted).
 
 
 23
 Hill argues that, because United States v. Graves, 908 F.2d 528, 530 (9th Cir.1990), requires that "the victim" for purposes of U.S.S.G. § 2A2.2(b)(1) be the victim of the assault in the count of conviction, so must "the conduct" punishable by § 2A2.4(b)(1) be limited to the conduct underlying the count of conviction. We reject the analogy, because the former guideline focuses on "the victim," as Graves explains, while the latter focuses upon "the conduct." As such, § 1B1.3 requires that we consider all of Hill's conduct during the commission of the offense of conviction to determine the appropriate guideline range.
 
 
 24
 Once Tannahill arrived at Hill's cell, Hill began to resist the officers with greater force. As a consequence, Hill kicked Tannahill, causing him to lose his balance and hit his head. This physical contact alone is sufficient to satisfy section 2A2.4(b)(1).
 
 
 25
 Despite the fact that the district court held that the physical contact between Hill and Earl warranted a three-level increase under section 2A2.4(b)(1), we can rightfully affirm the court's holding based on the contact between Hill and Tannahill. See Helvering v. Gowran, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings, the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."). Hence, we affirm the district court's increase of Hill's sentence under section 2A2.4(b)(1).
 
 
 26
 III. DID THE DISTRICT COURT ERR BY INCREASING HILL'S CRIMINAL HISTORY UNDER U.S.S.G. §§ 4A1.1(d) AND (e)?
 
 
 27
 Hill also contends that the district court erred by adding three points to his criminal history under sections 4A1.1(d) and (e) because this increase constitutes impermissible double punishment.[2] According to Hill, anyone in Hill's position who is convicted under 18 U.S.C. § 111 is necessarily a prisoner. Therefore, enhancing his criminal history based on his status as a prisoner, in addition to convicting him for resisting or impeding a federal officer (while in prison), is punishing him twice for the same conduct.
 
 
 28
 Hill's argument fails for two reasons. First, as a factual matter, resisting or impeding a federal officer can be committed at least as frequently by persons not under a sentence of imprisonment as by prisoners. More importantly, however, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." United States v. Wright, 891 F.2d 209, 212 (9th Cir.1989) (increasing a criminal history score under § 4A1.1(d) and (e) does not constitute an impermissible duplication of punishment) (quoting Missouri v. Hunter, 459 U.S. 359, 366 (1983)).
 
 
 29
 Therefore, addition of these points to Hill's criminal history score does not constitute double jeopardy.
 
 
 30
 IV. DID THE DISTRICT COURT ERR IN REFUSING TO GRANT HILL'S REQUEST FOR A DOWNWARD DEPARTURE?
 
 
 31
 Finally, Hill contends that the district court erred by refusing to depart downward, in light of the administrative sanctions imposed by the Parole Commission, as well as his psychological problems. We review "de novo a district court's legal determination that the Guidelines prevent a departure if the court indicates that it otherwise would have departed." United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992). On the other hand, a district court's discretionary refusal to depart downward is unreviewable. United States v. Morales, 898 F.2d 99, 102-03 (9th Cir.1990) (citation omitted).
 
 
 32
 In this case, the district court stated that after "considering all of the argument," a downward departure was not "warranted." This statement indicates that the district court made a discretionary determination about whether Hill deserved a downward departure. See United States v. Williams, 898 F.2d 1400, 1403 (9th Cir.1990) (the district court's statement that no facts supported the downward departure indicates the decision was discretionary and hence, unreviewable). In addition, the court did not indicate that it would have departed downward, but did not because of the constraints of the Guidelines. See Belden, 957 F.2d at 676. Hence, we find that the district court's refusal to depart downward in this case is not reviewable.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The Honorable William A. Ingram, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 No transcript of the plea hearing was prepared, and therefore we have no record of the factual basis for the plea. These facts are taken from the Presentence Report, and were not challenged by the defendant or the prosecution
 
 
 [2]
 Under § 4A1.1(d), a defendant's criminal history score is increased by two points if the defendant "committed the offense while under any criminal justice sentence." U.S.S.G. § 4A1.1(d). Section 4A1.1(e) also provides for a one-point increase if the defendant was in prison serving such a sentence. U.S.S.G. § 4A1.1(e)